UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM B. U.[1], | |
| Plaintiff, | |
| v. | CASE NO. 1:21-CV-324-MGG |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff William B. U. ("Mr. U") seeks judicial review of the Social Security Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 11]. For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

**I.    OVERVIEW OF THE CASE**

Mr. U protectively filed an application for DIB on November 6, 2018, alleging a disability onset date of August 27, 2018. Mr. U's claim was denied initially on July 3, 2019, and upon reconsideration on December 4, 2019. Following a telephonic hearing on November 25, 2020, an Administrative Law Judge ("ALJ") issued a decision on March 3, 2021, which affirmed the SSA's denial of benefits. The ALJ's decision became the final

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

decision of the SSA Commissioner when the SSA Appeals Council denied Mr. U's request for review on June 25, 2021. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Mr. U sought judicial review on August 24, 2021. Mr. U filed his opening brief on January 19, 2022, and the Commissioner filed her Memorandum in Support of Decision on March 30, 2022. This matter became ripe on April 14, 2022, without any reply brief being filed. *See* N.D. Ind. L.R. 7-3(d).

## II. APPLICABLE STANDARDS

### A. Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity [("SGA")] by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations as to: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his RFC; and, if not, (5) whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

B.  **Standard of Review**

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

III.  **ANALYSIS**

A.  **The ALJ's Decision on Mr. U's Application**

In her March 2021 decision finding Mr. U not disabled under the Act, the ALJ conducted the requisite five-step analysis for evaluating claims for disability benefits. 20

C.F.R. § 404.1520. At Step One, the ALJ determined that Mr. U had not engaged in SGA from the alleged onset date of August 27, 2018, through the date of the decision. At Step Two, the ALJ found that Mr. U suffers from the following severe impairments: a compression fracture of L3; status post myocardial infarction, with placement of two stents; and coronary artery disease. The ALJ further found Mr. U's anxiety non-severe.

At Step Three, the ALJ found that none of Mr. U's severe impairments, nor any combination of his impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ considered Listing 1.04 for disorders of the spine and any cardiovascular listing. Before moving on to Step Four, the ALJ assessed whether Mr. U can perform his past relevant work based upon his residual functional capacity ("RFC"). A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Here, the ALJ found that Mr. U had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with some additional limitations. [DE 12 at 24].

Based on this RFC, the ALJ found at Step Four that Mr. U was unable to perform his past relevant work as an industrial truck operator, heating and air conditioner servicer helper, and auto mechanic. [*Id.* at 28; 24]. Accordingly, the ALJ moved on to Step Five to determine whether Mr. U could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given [his] residual functional capacity

and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also* *Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). ALJs typically enlist a vocational expert ("VE") to testify regarding which occupations, if any, a claimant can perform. *See* S.S.R. 83-12, 1983 WL 31253 (Jan. 1, 1983). VEs use information from the Dictionary of Occupational Titles ("DOT")[2] to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE relied upon the DOT, the SkillTRAN program, and census data and identified the representative occupations of storage rental clerk, cafeteria attendant, and furniture rental clerk, which respectively have 63,000 jobs nationally, 29,000 jobs nationally, and 58,000 jobs nationally (150,000 jobs total), as jobs Mr. U could still perform with his RFC.

---

[2] The Employment and Training Administration ("ETA") of the U.S. Department of Labor created the DOT, but it has not been updated since 1991. This Court and other courts have observed that the occupations listed in the DOT are superannuated and, in many cases, antiquated if not obsolete. See, e.g., *Pamela H. v. Kijakazi,* No. 5:20-cv-00304, 2021 WL 4307457, at *6 (N.D.N.Y. Sept. 22, 2021) ("DOT definitions…are comically out of date."); *Karla J. v. Kijakazi,* No. 3:20-CV-1051-MGG, 2022 WL 4463347, at *5 (N.D. Ind. Sept. 26, 2022) (DOT "fails to account for minor recent inventions such as the computer and the internet," citing *Pamela H.,* infra.); *Gass v. Kijakazi,* No. 1:19-cv-404-TLS, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021). The ETA has replaced the DOT with the O*Net. As the number of buggy whip factory jobs has declined since the advent of the automobile, many of the jobs listed in the DOT no longer exist in significant numbers in the national and/or regional economies. The continued reliance on the DOT by the Commissioner is unsustainable, especially on the cusp of a large-scale upsurge in jobs using artificial intelligence. Continued use of occupational titles that are more than thirty years old is a grave disservice to SSD applicants and results in the unnecessary use of judicial resources as courts engage in legal contortions to review administrative decisions based on anachronistic listings. Previously, the Commissioner had announced that the DOT would be replaced with a revised "Occupational Information System" by 2020, but the roll out of the OIS has not come to fruition. The continued failure of the Commissioner to create an administrative record based on current occupational listings is cause for great concern and may have increasingly negative ramifications in social security appeals moving forward. As such, the undersigned encourages the Commissioner to adopt the O*Net, the OIS, or another up-to-date occupational listing for use in making Step 5 determinations. Here, significantly, the VE supplemented the DOT analysis using the SkillTRAN program, which ameliorates, at least in part, this Court's concerns about the antiquated nature of the job listings in the DOT.

Finding that Mr. U could make a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ determined that Mr. U was not under a disability as defined in the Act. [DE 12 at 30].

**B.     Discussion**

Mr. U challenges the ALJ's decision arguing that her Step Five finding is not supported by substantial evidence. Specifically, Mr. U challenges the VE's methodology in establishing the reliability of the national job numbers. Mr. U further argues that the number of jobs identified by the VE does not rise to the level of significance under the *Sally S.* doctrine.

**1.     Insufficient Methodology**

In support of his argument that the VE's methodology was insufficient to establish the reliability of national job numbers, Mr. U challenges the VE's inability, when testifying at the hearing, to provide the mathematical formula applied by the SkillTRAN program to reach the total number of jobs. Therefore, Mr. U concludes that the VE's testimony is not reliable and was improperly relied on by the ALJ.[3]

The Commissioner counters that the VE's testimony was based on multiple sources that combined to create "evidence sufficient to prove some modicum of confidence in its reliability." *Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018). The

---

[3] Mr. U's methodology argument is not novel. Mr. U's attorney has raised the same issue based on an identical analysis in multiple cases. *See, e.g., Hood v. Saul*, 2021 WL 5002717, No. 1:19-CV-370-TLS (N.D. Ind. Oct. 28, 2021); *Chavez v. Saul*, 2020 WL 5494744, No. 1:19-CV-301-DRL (N.D. Ind. Sept. 11, 2020); *Case v. Kijakazi*, 2022 WL 2063332, No. 1:21-CV-00051-SLC (N.D. Ind. June 8, 2022); *Maples v. Saul*, 2021 WL 1291766, No. 1:20-CV-157-PPS (N.D. Ind. Apr. 7, 2021); *Frankie M. v. Kijakazi*, 2022 WL 168094, No. 1:20-CV-228-JVB (N.D. Ind. Jan. 19, 2022); *Hoskins v. Kijakazi*, 2022 WL 17665088, No.1:21-CV-469-TLS-SLC (N.D. Ind. Dec. 14, 2022), *appeal filed*, No. 23-1260 (7th Cir. Feb. 13, 2023).

Commissioner also cites the unpublished case of *Bruno v. Saul*, in which the Seventh Circuit found that "[t]hough the VE's description [of the SkillTRAN program] did not reveal the precise mechanics and statistical model involved, it nevertheless constitutes a 'reasoned and principled explanation,' at least by the low substantial evidence standard." 817 F. App'x 238, 243 (7th Cir. 2020).

Here, the VE testified that she relied upon the Job Browser Pro software available on the SkillTRAN website and explained the most recently published process "for estimating employment numbers." [DE 12 at 73]. The VE explained that SkillTRAN uses "only government information, the Bureau of Census Current Population Survey and the Bureau of Labor Statistics Occupational Employment Survey, and national long term employment projections for its Dictionary of Occupation Titles estimates." [DE 12 at 72]. Reading an abstract, the expert testified:

> SkillTRAN has examined each of the 12,761 DOT occupations and cross-references to assign one or more North American [I]ndustry [C]lassification [S]ystem ("NAICS") industry codes to each DOT, which indicates which industries are the most likely to employ the given DOT occupations[.] Job Browser Pro . . . then filters the government data to show only the NAICS industries relevant for a specific DOT occupation.

[*Id.*].

It is at the final step of "industry level employment of an occupation," the VE explained, that an "equal distribution calculation is made," which estimates jobs by dividing all job numbers in a large category equally among the more specific job titles in a category. [*Id.*]. When asked for a specific mathematical formula, the VE was not able

7

to provide such a mathematical formula but did further explain how jobs are distributed between DOT titles. [*Id.* at 73–74].

A VE's explanation need "not reveal the precise mechanics and statistical method involved" in identifying the number of jobs available in the national economy for any DOT job title. *Bruno*, 817 F. App'x at 243. Rather, the VE must provide a "'reasoned and principled explanation [of her methodology]', at least by the low substantial evidence standard." *Id.* (quoting *Chavez*, 895 F.3d at 970). A VE's "job-number testimony will survive review under the substantial-evidence standard as long as it rests on a well-accepted methodology and the expert describes the methodology 'cogently and thoroughly.'" *Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1155). Moreover, this Court is unaware of any authority requiring a precise mathematical formula. *See Rebekah O. v. Kijakazi*, CAUSE NO. 1:21-cv-80-JVB, 2022 WL 1538547, *3 (N.D. Ind. May 16, 2022). In fact, the statutory and regulatory framework contain no such requirement. Title 42 U.S.C. § 405(a); *see also Milhem v. Kijakazi*, 52 F.4th 688 (7th Cir. 2022) (finding that a determination of significance does not depend upon the establishment of a standard for significance).

Here, the VE testified to having used the SkillTRAN program to generate the number of jobs available for the DOT job titles identified within the constraints of Mr. U's RFC. As seen in her testimony quoted above, the VE descriptively, though not mathematically, provided a "reasoned and principled explanation" of how the program derived its estimates of job numbers. *See Chavez*, 895 F.3d at 970. This is sufficient to

8

provide the adequate level of confidence in the reliability of her testimony and provides no basis for remand. *See Bruno*, 817 F. App'x at 243.

### 2. Significance of 150,000 Jobs

Mr. U also contends that the ALJ's decision at Step Five is not supported by substantial evidence because the number of jobs identified—150,000—does not constitute a significant number as required to satisfy the Step Five requirements. 20 C.F.R. § 404.1560(c)(2). In support, Mr. U relies on this Court's analysis in *Sally S. v. Berryhill*, CIVIL NO. 2:18-CV-460, 2019 WL 3335033 (N.D. Ind. July 23, 2019).

In *Sally S.*, the ALJ found that the claimant was not disabled based upon a VE's testimony that the claimant could still perform 120,350 jobs in the national economy. *Id. at *11*. On judicial review, the claimant challenged the ALJ's decision by contending that the 120,350 jobs identified at Step Five accounted for only 0.080% of the 150,606,000 jobs existing in the national economy. The Court found that this was not a significant number of jobs and remanded the case for further administrative proceedings. *See id.*

Here, Mr. U contends that, like in *Sally S.*, the Commissioner's conclusion that a significant number of jobs Mr. U can perform exists in the national economy was not supported by substantial evidence. *See id.* As such, Mr. U contends that 150,000 jobs, or 0.1% of the 149,809,000 jobs in the national economy, is not significant such that remand is warranted so he can be awarded the benefits to which he alleges he is entitled. [DE 18 at 14].

The Seventh Circuit recently addressed the same *Sally S.* significance issue in two other cases litigated by Mr. U's counsel. *See Milhem*, 52 F.4th 688; *Kuhn v. Kijakazi*, No.

9

22-1389, 2022 WL 17546947 (7th Cir. Dec. 9, 2022) (relying on *Milhem*). Like Mr. U, the claimants in *Milhem* and *Kuhn* relied upon *Sally S.* to contend that the 89,000 jobs identified at Step Five in both decisions was not significant. However, the court in *Milhem* found reliance on *Sally S.* "misplaced," observing that the Seventh Circuit's "case law does not provide a clear baseline for how many jobs are needed." 52 F.4th at 695-96. *Milhem* further observed that the "only guidepost" was the court's prior decision in *Weatherbee v. Astrue*, which stated that 140,000 jobs nationwide was "well above the threshold for significance." *Id.* at 695 (quoting *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011)). Accordingly, *Milhem* declined to rely on the percentage calculation used by the district court in *Sally S.*

      Mr. U also contends that the "statutory concept of significant must have a definition, standard, and/or formula" and that because there is not a "level that constitutes significance, the Commissioner has not met [her] Step 5 burden." [DE 18 at 16–18]. However, the Seventh Circuit rejected this argument in *Milhem*, finding that the SSA's statutes and regulations "contain[ ] no such requirement" to have a set definition, standard, or formula for "significance." 52 F.4th at 694–95. Further, the *Milhem* court found that "the establishment of such a standard might imply a 'categorical rule,' which has been rejected in the context of the substantial evidence standard in social security hearings." *Id.* 695 (citing *Biestek*, 139 S. Ct. at 1157). Therefore, an ALJ's determination is "not depend[ent] [on] the establishment of a standard for significance." *Id.*

      Indeed, rather than stating that a certain number of jobs is significant, the court in *Milhem* considered whether the ALJ's decision at Step Five was based upon

substantial evidence. *Id.* at 696. Substantial evidence means "evidence a reasonable person would accept as adequate to support the decision." *Id.* (citing *Kastner v. Astrue*, 697 F.3d 642 (7th Cir. 2012)). The *Milhem* court found that the ALJ "grounded her conclusion that the number of jobs mentioned was 'significant' on her consideration of [Milhem's] age, education, work experience, and [RFC] and that [Milhem] was capable of making a successful adjustment to work that exists in the economy." *Id.* The court also found that the ALJ's decision reflected an assessment of "the tolerance of absences in [the identified] positions, the requirements for being on task in the workplace, and the frequency of breaks." *Id.* For these reasons, the court found that "a reasonable person would accept 89,000 jobs in the national economy as being a significant number." *Id., see also Kuhn,* 2022 WL 17546947 at *3 (finding that substantial evidence supported the ALJ's finding that 89,000 was significant based on the identical analysis).

Moreover, even though the court in *Milhem* did not identify a specific number as "significant," the court did observe that the 89,000 jobs identified in the decision was in accord with the number of jobs found to be significant in other circuits. *See* 52 F.4th at 697 (citing *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022), *cert. denied sub nom. Moats v. Kijakazi*, 143 S. Ct. 785 (2023) (finding 32,000 jobs nationwide significant); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 jobs nationwide); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs nationwide); and *Weiler v. Apfel*, 179 F.3d 1107, 1110–11 (8th Cir. 1999) (32,000 jobs nationwide)).

Here, the ALJ conducted an analysis akin to the ALJ in *Milhem*. The ALJ inquired "whether jobs existed in the national economy for an individual with [Mr. U's] age,

education, work experience, and [RFC]." [DE 12 at 29]. The VE testified that Mr. U could still "perform the requirements of representative occupations" such as Storage Rental Clerk, Cafeteria Attendant, and Furniture Rental Clerk. [*Id.*]. In her Step Five analysis, the ALJ noted that the VE relied upon the provided RFC, "knowledge of the field of vocational rehabilitation, and her methodology of the job availability." [DE 12 at 29]. The ALJ considered the VE's testimony explaining that "she uses SkillTRAN and Job Browser Pro, relies on full time wages only on the national level," and used "data aggregated from May 2020, which is the most recently available data." [*Id.*]. The ALJ further explained that the VE's "estimates were based in part upon the publications of which the Agency takes administrative notice." [*Id.* at 30]. The ALJ also found that the VE was qualified to provide an estimate of jobs, to which Mr. U did not object. [*Id.*] Therefore, the ALJ found that the VE's testimony was reliable and consistent with the DOT. [*Id.*] Based on the VE testimony, the ALJ then concluded that Mr. U is capable of making a successful adjustment to other work that exists in significant numbers in the economy. [*Id.*]

While no threshold exists for "significance," the 150,000 jobs identified for Mr. U is in accord with the numbers deemed significant by the other circuits cited by *Milhem*. 52 F.4th at 697. It is also consistent with numbers deemed significant by other district courts interpreting *Milhem*. *See, e.g., Sara B.*, 2023 WL 2013323, at *3 (finding that 41,000 jobs identified at Step Five was not an independent ground for reversal while remanding on other grounds); *Maryjane R. v. Kijakazi*, No. 1:21-CV-02683-SEB-MPB, 2023 WL 2118161 (S.D. Ind. Jan. 30, 2023), *report and recommendation adopted sub nom.*

*Russell v. Kijakazi*, No. 1:21-CV-02683-SEB-MPB, 2023 WL 2116401 (S.D. Ind. Feb. 17, 2023) (finding 99,000 jobs significant under *Milhem* but recommending reversal on other grounds); *Hoskins v. Kijakazi*, No. 1:21-CV-469-TLS-SLC, 2022 WL 17665088, at *8 (N.D. Ind. Dec. 14, 2022), *appeal filed*, No. 23-1260 (7th Cir. Feb. 13, 2023) (finding that substantial evidence supported an ALJ's conclusion that 21,500 jobs is significant to be in accord with *Milhem*); *Harry v. Kijakazi*, No. 22-CV-0186-BHL, 2022 WL 17584174, at *5 (E.D. Wis. Dec. 12, 2022) (finding that substantial evidence supported an ALJ's conclusion that 29,800 jobs was significant under *Milhem*); *Teresa M. v. Kijakazi*, No. 20 C 859, 2022 WL 17406596, at *8 (N.D. Ill. Nov. 22, 2022) (finding that substantial evidence supported a Step Five finding that 28,000 jobs was significant under *Milhem*); *but see James A. v. Saul*, 471 F. Supp. 3d 856, 860 (N.D. Ind. 2020) (finding, as a matter of law, 14,500 jobs is not a significant number of jobs).

Following *Milhem*, the ALJ supported his finding here that the number of jobs existing in the national economy that Mr. U can perform given his RFC and other vocational factors—150,000—is significant with substantial evidence. *See* 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz*, 559 F.3d at 742-43.

### IV. CONCLUSION

For the reasons stated above, the ALJ's decision is supported by substantial evidence and is therefore **AFFIRMED**.

**SO ORDERED** this 15th day of May 2023.

                                                 s/Michael G. Gotsch, Sr.
                                             Michael G. Gotsch, Sr.
                                             United States Magistrate Judge